# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**JAMES OWENS**
**GARY ROBERT OWENS**
**BARBARA GOFF**
**5424 Del Rey Drive**
**Colorado Springs, CO 80918**
    **and**
**FRANK B. PRESSLEY, Jr.**
**YASEMIN B. PRESSLEY**
**DAVID A. PRESSLEY**
**THOMAS C. PRESSLEY**
**MICHAEL F. PRESSLEY**
**BERK F. PRESSLEY**
**JON B. PRESSLEY**
**MARC Y. PRESSLEY**
**SUNDUS BUYUK**
**MONTINE BOWEN**
**FRANK PRESSLEY, Sr.**
**BAHAR BUYUK**
**SERPIL BUYUK**
**TULAY BUYUK**
**AHMET BUYUK**
**DOROTHY WILLARD**
**11197 NW 70 Court**
**Parkland, FL 33076**
    **and**
**ELLEN MARIE BOMER**
**DONALD  BOMER**
**MICHAEL JAMES CORMIER**
**ANDREW JOHN WILLIAM CORMIER**
**ALEXANDRA RAIN CORMIER**
**PATRICIA FEORE**
**4710 Rutledge Drive, NW**
**Huntsville, AL 35816**
    **and**
**CLYDE M. HIRN**
**ALICE M. HIRN**
**PATRICIA K. FAST**
**INEZ P. HIRN**
**2249 NW 139 Avenue**
**Sunrise, FL 33323**

**FILED**

AUG – 7 2008

Clerk, U.S. District and
Bankruptcy Courts

Case: 1:08-cv-01378
Assigned To : Bates, John D.
Assign. Date : 8/7/2008
Description: PI/Malpractice

and
**JOYCE REED**
**WORLEY LEE REED**
**CHERYL L. BLOOD**
**BRET W. REED**
**RUTH ANN WHITESIDE**
**LORIE GULICK**
**PAM WILLIAMS**
**FLOSSIE VARNEY**
**LINDA JANE WHITESIDE LESLIE**
**2415 Promwood Loop**
**Apartment #2**
**Montgomery, AL 36106**
and
**LYDIA SPARKS**
**HOWARD SPARKS**
**TABITHA CARTER**
**HOWARD SPARKS, Jr.**
**MICHAEL RAY SPARKS**
**7401 Eastmoreland Road, #919**
**Annandale, VA 22003**
and
**GARY O. SPIERS**
**VICTORIA Q. SPIERS**
**VICTORIA J. SPIERS**
**JULITA A. QUALICIO**
**United States Embassy**
**Beijing, China**
                    **Plaintiffs**


        v.                                          Civil No._____


**REPUBLIC OF SUDAN**
**Ministry of External Affairs**
**People's Palace**
**Khartoum, Sudan**
        and
**MINISTRY OF THE INTERIOR**
**OF THE REPUBLIC OF THE SUDAN**
**People's Palace**
**Khartoum, Sudan**
        and

2

**THE ISLAMIC REPUBLIC OF IRAN**
**Ministry of Foreign Affairs**
**Khomeini Avenue**
**United Nations Street**
**Tehran, Iran**
       **and**
**THE IRANIAN MINISTRY**
**OF INFORMATION AND SECURITY**
**Pasdaran Avenue**
**Golestan Yekom**
**Tehran, Iran**
               **Defendants**

# COMPLAINT

(1) This action is brought by the Plaintiffs, James Owens, Gary Robert Owens, Barbara Goff, Frank B. Pressley, Jr., Yasemin Pressley, David Pressley, Thomas Pressley, Michael Pressley, Berk Pressley, Jon Pressley, Marc Pressley, Sundus Buyuk, Montine Bowen, Frank Pressley, Sr., Bahar Buyuk, Serpil Buyuk, Tulay Buyuk, Ahmet Buyuk, Dorothy Willard, Ellen Bomer, Donald Bomer, Michael James Cormier, Andrew Cormier, Alexandra Rain Cormier, Patricia Feore, Clyde M. Hirn, Alice M. Hirn, Patricia K. Fast, Inez P. Hirn, Michael James Cormier, Patricia Feore, Joyce Ann Reed, Worley Lee Reed, Cheryl L. Blood, Bret W. Reed, Ruth Ann Whiteside, Lorie Gulick, Pam Williams, Flossie Varney, Linda Jane Whiteside Leslie, Lydia Sparks, Howard Sparks, Tabitha Carter, Howard Sparks, Jr., Michael Ray Sparks, Gary O. Spiers, Victoria Q. Spiers, Julita Qualicio and Victoria J. Spiers, by counsel, in their individual capacity pursuant to the Anti-Terrorism Amendments to the Foreign Sovereign Immunities Act. (28 United States Code Section 1602 et seq.), and the laws of the jurisdiction of residence of those suffering physical injuries as hereinafter alleged. This Court exercises subject matter jurisdiction in accordance with the provisions of 28 United States Code Sections

3

1330(a), 1331, 1332(a)(2), and 1605A. The Court exercises in personam jurisdiction over the parties designated as Defendants in accordance with the provisions of 28 United States Code Section 1605A. Venue in this Court is proper in accordance with the provisions of 28 United States Code Section 1391(f)(4), which provides in pertinent part that a civil action against a foreign state may be brought in the United States District Court for the District of Columbia.

(2) Plaintiffs, James Owens, Frank B. Pressley, Jr., Yasemin B. Pressley, Ellen Bomer, Clyde M. Hirn, Joyce Reed, Worley Lee Reed, Lydia Sparks, Gary Spiers and Victoria Q. Spiers, are citizens of the United States who suffered physical injury as a result of a the terrorist attacks upon the Embassies of the United States located in Dar Es Salaam, Tanzania and Nairobi, Kenya on August 7, 1998, which attacks were carried out by Khalafan Khamis Mohamed, a member of the al Qaeda terrorist group, headed by Usama Bin Laden, which group, together with the Lebanese terrorist group Hezbollah, was given, inter alia, cover, sanctuary, technical assistance, explosive devices and training by the Defendants, the Islamic Republic of Iran, the Iranian Ministry of Information and Security, the Republic of the Sudan and the Ministry Of the Interior of the Republic of Sudan. As a result of these actions, as herein more fully set forth below, a number of American Nationals, Tanzanian Nationals and Kenyan Nationals were killed or injured. The Plaintiffs above described were, at all times relevant to this Complaint, American Nationals as that term is defined in section 101(a)(22) of the Immigration and Nationality Act. Plaintiffs, Frank B. Pressley, Jr., Ellen Bomer, Clyde M. Hirn, Joyce Reed, Worley Lee Reed, Lydia Sparks, Gary Spiers and Vicky Spiers, were civilian employees of the United States Government engaged in their duties at the time of the events alleged herein.

4

Plaintiff, James Owens, was neither an employee of the United States nor a representative of the United States in any capacity at the time of the events alleged herein.

(3) The Defendants, the Islamic Republic of Iran and the Republic of Sudan, are foreign states which were at the time of the acts hereinafter complained of and are to the present designated as state sponsors of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 United States Code Appendix, Section 2405(j)).

(4) The Defendant, the Iranian Ministry of Information and Security, is an agency of the Defendant, the Islamic Republic of Iran. The Defendant, the Ministry of the Interior of the Sudan, is an agency of the Defendant, the Republic of the Sudan. The activities of these two agencies included, at all times relevant to this action, the prosecution of terrorist acts directed against the nationals of the United States, by and through provision of material support to various terrorist organizations including "al Qaeda" and "Hezbollah". The Defendants, through their agents, officials and employees, who acted within the scope of their employment or agency, aided and abetted and conspired with those who carried the attacks described below.

(5) Hezbollah is an organization of Lebanese Muslims who are adherents of the Shia or Shiite faction of Islam. It represents itself as "an Islamic freedom fighting movement" which views any presence of the United States in the Near East as contrary to the religious beliefs of its members. It advocates the expulsion of the United States from the Near East, and is committed to violent action to that end. At all times relevant to this action, Hezbollah was given extensive support by the Defendants which permitted it to carry out a wide ranging program of terrorism against the United States. At the time of

the acts, which give rise to this action, Hezbollah was under the complete operational

control of those Defendants, through Iranian Revolutionary Guards units.

(6) Al Qaeda is an organization of Muslim extremists, which has been designated

as a terrorist group by the United States Department of State. It operates world wide with

the avowed purpose of bringing about the destruction of the United States by violent

means.

(7) The Defendant, the Ministry of the Interior of the Republic of the Sudan, is an

agency of Defendant, the Republic of the Sudan. Its activities at the time of this

occurrence included the support of terrorist activities directed against foreign targets by

terrorist groups operating with cover of the Republic of the Sudan.

(8) The Defendant, the Republic of Sudan, acting through the Defendant, the

Ministry of the Interior of the Republic of the Sudan, entered into an arrangement with al

Qaeda and Hezbollah under which those organizations received shelter and protection

from interference while carrying out planning and training of various persons for terrorist

attacks, including the attacks of August 7, 1998. These included an organizational and

planning meeting within the Republic of the Sudan of Usama Bin Laden, chief of al

Qaeda, and Imad Mughaniyah, chief of Hezbollah's terrorist activities, with the purpose

of planning and carrying out the attacks upon the embassies of the United States in Dar

Es Salaam, Tanzania and Nairobi, Kenya, which occurred on August 7, 1998. More

specifically, Plaintiffs allege:

a) In the early 1990s, the government of Sudan sent overtures to Bin Laden and Al

   Qaeda, inviting the group to relocate en mass from Afghanistan to the Sudan.

   Jamal Ahmed Al-Fadl, a top Al Qaeda lieutenant who served Bin Laden in

**6**

Afghanistan as well as the Sudan, learned of the impending relationship between Al Qaeda and the Sudanese government for the first time at one of the meetings in Peshwar, Pakistan that occurred between the Sudanese government, Bin Laden and other Al Qaeda members. The representatives of the Sudanese government, promised the support of that government should Al Qaeda come to the Sudan. Al Qaeda thereafter used Sudanese Airways planes to ferry anti-tank rockets and Stinger missiles from Afghanistan to the Sudan.

b) The government of the Sudan is run by President Field Marshall Omar Hassan al-Bashir, the head of state of the Sudan, through an alliance of the military and the National Congress Party, formerly the National Islamic Front.

c) Al-Fadl went to the Sudan to secure residential and commercial property for Al Qaeda. The purpose of some of the property was to provide a safe place to train Al Qaeda militants.

d) Essam Al Riddi, a pilot who worked for Bin Laden in 1993, stated that he purchased a plane for Bin Laden; oversaw its refurbishment; and flew it to Khartoum in 1993.

e) While Al Riddi stayed in Khartoum, he dined with Bin Laden and had several discussions with him. Bin Laden was staying in a large villa in Khartoum, with an office and a guesthouse. The Sudanese government provided security for Al Qaeda. Fifteen to twenty Sudanese men dressed in Sudanese army fatigues, using jeeps with Sudanese army license plates, were stationed at the villa. Mr. Al-Riddi confirmed that this security function was carried out by the Government of Sudan.

f)  Al Qaeda provided Al Riddi with a plane from the Sudan Airlines to ferry militants to Nairobi. Bin Laden discussed the possibility of Al Riddi transporting some Stinger missiles from Pakistan to the Sudan.

g)  Bin Laden assured him that the Sudanese and Pakistani intelligence agencies would cooperate with the weapons transfer.

h)  The training that Al Qaeda engaged in the Sudan included explosives training. The loud noises drew the local police after complaints from neighbors and Al Fadl was among those arrested. He was quickly released, due to the close relationship between Al Qaeda, and the Sudanese intelligence service, a Defendant in this action. According to Al-Fadl:

> [W]e call the intelligence office because we have relationship with them, and the intelligence office came and they tell the local police we take care of that, and don't worry about that. And they take us to the jail, and they say you shouldn't do that, we tell you to refresh[1], not to make real explosives.

i)  Al-Fadl saw a letter from President al-Bashir that explained the relationship between Al Qaeda and the Sudanese intelligence. With the explicit approval of Bin Laden, Al-Fadl also personally worked with the Sudanese intelligence officers.

j)  The Sudanese intelligence officers and government officials, at all times, acted within the scope of their office or agency during the activities described in this Complaint.

k)  The intelligence officers were organized into a "delegation office" to meet the needs of the Al Qaeda group in the Sudan. There was an explicit fear that agents

from foreign governments or informants would disclose Al Qaeda's location and activities in the Sudan. Some of these informants were consequently jailed in the Sudan. Al-Fadl would identify suspicious foreigners to the Sudanese intelligence as Al Qaeda sought to keep its presence and activities in the Sudan secret.

l) The delegation office, staffed with Sudanese intelligence officers, also helped provide security for Al Qaeda and facilitated the movement of weapons in and out of the country. On one particular trip, the weapons were taken out of the country by delivering four crates of weapons to a hangar at a Sudanese military base, and then to a port facility owned by the Sudanese army.

m) The letter from President al-Bashir was absolutely essential to the operations of the Al Qaeda terrorist group, which was secretly training in the Sudan. The letter allowed Al Qaeda members, such as Al Fadl, to bypass tax and customs collection on international shipments and guaranteed their shipments, coming or going, would not be inspected.

n) Weapons and explosive shipments moved through a quay protected by the Sudanese military in Port Sudan into a barracks used by Sudanese armored and mechanized infantry. The letter would allow shipments from overseas to bypass inspection at a port and then travel back to Khartoum without inspection by the local police at the numerous checkpoints along the way.

o) The delegation office, the Sudanese government's go-between with Al Qaeda, also protected Al Qaeda members, such as Al-Fadl, from the interference of Sudanese immigrations office at the airport. This was important because if Al

---

[1] "Refresh" meant refresher courses for the militants who had already received training in the past.

Qaeda members were caught abroad and their passports were stamped with Sudanese immigration markings, it would be clear to foreign agents where the organization was located.

p) Al Qaeda also set up a number of companies that provided it with critical income so that it to continue its growth and evolution into a lethal organization with global reach. However, Al Qaeda did not come to Sudan to operate as a regular capitalist enterprise. Rather, the purpose of the investment in Sudanese business activity was as adjunct to its mission of aggression against the West, as explicitly stated by Bin Laden himself:

> [O]ur agenda is bigger than business. We not going to make business here, but we need to help the government and the government help our group, and this our purpose.

q) Among the Sudanese companies founded by Al Qaeda were: Laden International Company for import and export; Taba Investment for currency exchange; Hijra Construction Company, which built the largest road existing in Sudan; and the Al Themar al Mubaraka, which ran the farm where Al Qaeda trained its militants in explosives. The Hijra Construction Company purchased explosives for its road and bridge building activities.

r) Al Qaeda also had extensive holdings in Khartoum, including business offices, guesthouses, farms and residential houses. Bin Laden even had a bank account in Khartoum in his true name. Al Qaeda purchased some of the companies directly from the Sudanese government. The funding that these companies provided to Al Qaeda was critical to its survival and continued existence. At a meeting, which

included Bin Laden, the fluctuation of Sudanese currency caused great concern as most of Al Qaeda's income was derived from this business activity.

s) Al Qaeda's position regarding the United States was known to the world by 1992 when Bin Laden issued a fatwa against the United States due to its presence in the Gulf region during the First Gulf War and its actions in Somalia. The discussion surrounding the fatwa included an explicit allowance for the murder of innocent civilians. Al Qaeda provided support to terrorist groups in Somalia, Yemen, the Philippines, Tajikistan, and Pakistan, among others.

t) The partnership forged with the Sudanese government derived benefits for both parties in the manner of a business partnership. The Sudanese government employed Al Qaeda to manufacture chemical weapons in a section of Khartoum, called Hilat Koko, for use in the genocidal campaign in the southern Sudan. Al-Fadl traveled to the chemical weapons manufacturing area with a Sudanese military officer, who explained the need for chemical weapons by the Sudanese government.

u) Al Qaeda also provided communications equipment and Kalishnikov rifles for the Sudanese army, founded by the Islamic National Front, to fight the Christian rebels in the south. Al-Fadl, as part of this arrangement, also worked directly for the Sudanese government. For example, a Sudanese intelligence office who also worked in the immigration office, approached Al-Fadl and asked him to spy on a government opposition leader. Al-Fadl arrested the opposition leader and tried to turn him away from his work against the Sudanese government. The Sudanese intelligence officer advised Al-Fadl to lie to the opposition leader, to tell him that

**11**

Al-Fadl had quit Al Qaeda and had stopped working with the government. Al-Fadl reported back to the head of the delegation office, the group of Sudanese intelligence officers that protected Al Qaeda; facilitated communications with the Sudanese government; and provided logistical support.

v) Dr. Abdullah Mohamed Yusef, a member of the Islamic National Front, through which President al-Bashir ran the Sudanese government, organized travel, documents and funneled economic aid to Al Qaeda while it was located in the Sudan.

w) Al Qaeda entered into a transaction to purchase uranium through the former President of the Sudan, currently an officer in the Sudanese army. The quality of the uranium was tested in Hilat Koko, the section of Khartoum where the government was partnered with Al Qaeda in the manufacture of chemical weapons. Al-Fadl discussed the uranium test with a member of the Sudanese government, whose brother "runs" the building where the chemical weapon manufacture was housed.

x) Without the material support, assistance, and aid provided by Sudanese government officials acting within the scope of their agency, employment or office, Al Qaeda could not have carried out the United States embassy bombings that caused plaintiffs' injuries. Such material support, assistance, and aid fits within the definition of material support as described by 18 U.S.C. § 2339A.

y) The defendants not only knew that Al Qaeda was attempting to conceal itself in the Sudan, but facilitated and furthered Al Qaeda's concealment through the activities of the Sudanese intelligence services. The scale of support that

**12**

defendants furnished Al Qaeda was substantial. The regime invited Al Qaeda to roost in the Sudan and knew of, at least from 1992 onward, Al Qaeda's anti-US crusade.

z) The then and current regime of Sudan explicitly allied itself with Al Qaeda for no legal or moral purpose. The regime conspired with Al Qaeda in the manufacture of weapons and training of terrorists, all the while knowing of Al Qaeda's anti-US crusade. The provision of support to a terrorist organization is illegal and unlawful. The explicit purpose of their agreement was to make each stronger. The US Embassy bombings greatly enhanced Al Qaeda's worldwide reputation and attracted money, recruits and support from those allied against the United States. Sudan carried out these acts knowing of Al Qaeda's program of terrorist attacks against American and other targets.

(9) Acting upon its knowledge of the attacks about to be carried out by those with whom it had conspired, the Defendant, the Islamic Republic of Iran, withdrew its diplomatic personnel from both Dar Es Salaam and Nairobi on August 6, 1998. The next day the attack was carried out against the American embassies in both locations. At Dar Es Salaam, the American embassy was attacked through detonation of materials in a truck including TNT, acetelyne cylinder tanks, bags of nitrate fertilizer and a detonator. At Nairobi the American Embassy was attacked through detonation of materials being transported by truck including a gas enhanced explosive device. The Iranian Ministry of Information and Security, the Iranian agents of the Defendants in operational control of Hezbollah operated with high level technical expertise in the use of explosives which would not have been available to the Al Qaeda operatives in the absence of Iranian

13

participation. The Ministry of the Interior of the Republic of the Sudan provided cover and protection for the organization and training of the persons carrying out the attack as well as venues for these activities.

(10) The actions of the agents and co-conspirators of the Defendants, and those who were substantially aided and abetted by Defendants, as set forth above, inflicted mental distress upon the families of the plaintiffs, who suffered physical injuries, extrajudicial killings, and assault and battery under state common law. The material support rendered to co-conspirators of the Defendants, and those who were substantially aided and abetted by Defendants, fits within the definition of material support as described by 18 U.S.C. § 2339A.

(11) The formation of Hezbollah and its emergence as a major terrorist organization was the product of direct intervention by Iranian operatives, including the Iranian Revolutionary Guards and the Defendant, the Iranian Ministry of Information. The above referred to activities of Hezbollah were financed, technologically supported and commanded by Iranian military/intelligence operatives.

### COUNT I
### CLAIM OF JAMES OWENS FOR PERSONAL INJURY
### RESULTING FROM ASSAULT AND BATTERY
### 28 U.S.C. §1605A AND VIRGINIA COMMON LAW

(12) Plaintiff, James Owens, a resident of the State of Virginia at the time of the occurrence alleged, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

(13) On August 7, 1998, when the explosive device described above was detonated at Dar Es Salaam, James Owens suffered severe and permanent injuries,

**14**

including a permanent loss of hearing, blast burns, severe lacerations which have resulted in scarring and permanent, and severe post traumatic stress disorder. The explosion was intended to cause harmful contact with plaintiff and put him in reasonable apprehension of imminent battery. These injuries were caused by a willful and deliberate act of persons who had been materially assisted by Defendants for the purpose of inflicting physical injuries upon this Plaintiff and others and by so doing to intimidate the United States, and to cause its withdrawal from the Near East and Africa. Those persons were at all times acting with the material support of the Defendants and with the concurrence of the Defendants, the Islamic Republic of Iran, the Iranian Ministry of Information and Security, the Republic of the Sudan and the Ministry of the Interior of the Republic of the Sudan.

(14) As a direct and proximate consequence of the intentional acts of the agents of the Defendants as above set forth and the injuries thereby inflicted, Plaintiff, James Owens has been required to undergo extensive medical treatment, nursing care, and other treatment, for which he has been required to expend funds, has occasioned a loss of wages and has endured great pain and suffering, and has thereby suffered damages in the amount of $10,000,000.00.

**WHEREFORE,** Plaintiff, James Owens, demands judgment jointly and severally, against the Defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of Information and Security, in the amount of **TEN MILLION DOLLARS ($10,000,000.00),** besides costs.

**15**

## COUNT II
## CLAIM OF JAMES OWENS, GARY ROBERT OWENS AND BARBARA GOFF
## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## 28 U.S.C. §1605A AND VIRGINIA COMMON LAW

(15) Plaintiffs, James Owens, Gary Robert Owens and Barbara Goff repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

(16) As a direct and intended consequence of the intentional and reckless actions of the Defendants, conduct that is intolerable in a civilized society, the Islamic Republic of Iran, the Republic of Sudan, the Ministry of the Interior of the Republic of Sudan and the Iranian Ministry of Information and Security, their co-conspirators and those who were substantially aided and abetted by Defendants who carried out the attacks above alleged, the Plaintiffs, James Owens, Gary Robert Owens and Barbara Goff were caused severe mental distress, which has required continuing treatment, which will continue for the balance of the Plaintiffs' lives, and they have thereby suffered damages each in the amount of twenty million dollars.

**WHEREFORE,** Plaintiffs, James Owens, Gary Robert Owens and Barbara Goff demand judgment jointly and severally, against the Defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of Information and Security, each in the amount of **TWENTY MILLION DOLLARS ($20,000,000.00),** besides costs.

## COUNT III
## CLAIM OF FRANK B. PRESSLEY, Jr. FOR PERSONAL INJURY
## RESULTING FROM ASSAULT AND BATTERY
## 28 U.S.C. §1605A AND FLORIDA COMMON LAW

(17) Plaintiff, Frank B. Pressley, Jr., a resident of the State of Florida at the time of the occurrence alleged, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

(18) On August 7, 1998, when the explosive device described above was detonated at Nairobi, Plaintiff, Frank B. Pressley, Jr., suffered severe and permanent injuries, including but not limited to, destruction of his left shoulder joint, blast burns, severe laceration of his nose, loss of teeth, a fractured jaw, nerve damage in the hands, glass and other shrapnel wounds to the head, fractures to the cervical spine, laceration and connective tissue damage to both knees, severe lacerations which have resulted in permanent scarring, and severe post traumatic stress disorder. The explosion was intended to cause harmful contact with plaintiff and put him in reasonable apprehension of imminent battery. These injuries were caused by a willful and deliberate act of persons who had been materially assisted by Defendants for the purpose of inflicting physical injuries upon this Plaintiff and others and by so doing to intimidate the United States, and to cause its withdrawal from the Near East and Africa. Those persons were at all times acting with the material support of the Defendants and with the concurrence of the Defendants, the Islamic Republic of Iran, the Iranian Ministry of Information and Security, the Republic of the Sudan and the Ministry of the Interior of the Republic of the Sudan.

**17**

(19) As a direct and proximate consequence of the intentional acts of the agents of the Defendants as above set forth and the injuries thereby inflicted, Plaintiff, Frank B. Pressley, Jr., has been required to undergo extensive medical treatment, and other treatment, for which he has been required to expend funds, has occasioned a loss of wages and has endured great pain and suffering, humiliation and embarrassment, and he has thereby suffered damages in the amount of $20,000,000.00.

**WHEREFORE,** Plaintiff, Frank B. Pressley, Jr., demands judgment jointly and severally, against the Defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of Information and Security, in the amount of **TWENTY MILLION DOLLARS ($20,000,000.00),** besides costs.

### COUNT IV
### CLAIM OF YASEMIN B. PRESSLEY FOR PERSONAL INJURY RESULTING FROM ASSAULT AND BATTERY
### 28 U.S.C. §1605A AND FLORIDA COMMON LAW

(20) Plaintiff, Yasemin B. Pressley, a resident of the State of Florida at the time of the occurrence alleged, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

(21) On August 7, 1998, when the explosive device described above was detonated at Nairobi, Plaintiff, Yasemin B. Pressley, suffered severe and permanent injuries, including but not limited to, severe lacerations, glass and other shrapnel wounds and severe post traumatic stress disorder. The explosion was intended to cause harmful contact with plaintiff and put her in reasonable apprehension of imminent battery. These

**18**

injuries were caused by a willful and deliberate act of persons who had been materially assisted by Defendants for the purpose of inflicting physical injuries upon this Plaintiff and others and by so doing to intimidate the United States, and to cause its withdrawal from the Near East and Africa. Those persons were at all times acting with the material support of the Defendants and with the concurrence of the Defendants, the Islamic Republic of Iran, the Iranian Ministry of Information and Security, the Republic of the Sudan and the Ministry of the Interior of the Republic of the Sudan.

(22) As a direct and proximate consequence of the intentional acts of the agents of the Defendants as above set forth and the injuries thereby inflicted, Plaintiff, Yasemin B. Pressley, has been required to undergo extensive medical treatment, nursing care, and other treatment, for which she has been required to expend funds, has occasioned a loss of wages and has endured great pain and suffering, humiliation and embarrassment, and she has thereby suffered damages in the amount of $10,000,000.00.

**WHEREFORE,** Plaintiff, Yasemin B. Pressley, demands judgment jointly and severally, against the Defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of Information and Security, in the amount of **TEN MILLION DOLLARS ($10,000,000.00),** besides costs.

**19**

## COUNT V
## CLAIM OF FRANK B. PRESSLEY, Jr., YASEMIN B. PRESSLEY, DAVID A. PRESSLEY, THOMAS C. PRESSLEY, MICHAEL F. PRESSLEY, BERK F. PRESSLEY, JON B. PRESSLEY, MARC Y. PRESSLEY, SUNDUS BUYUK, MONTINE BOWEN, FRANK PRESSLEY, Sr., BAHAR BUYUK, SERPIL BUYUK, TULAY BUYUK, AHMET BUYUK AND DOROTHY WILLARD FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS 28 U.S.C. §1605A AND FLORIDA COMMON LAW

(23) Plaintiffs, Frank B. Pressley, Jr., Yasemin B. Pressley, David A. Pressley,

Thomas C. Pressley, Michael F. Pressley, Berk F. Pressley, Jon B. Pressley, Marc Y.

Pressley, Sundus Buyuk, Montine Bowen, Frank Pressley, Sr., Bahar Buyuk, Serpil

Buyuk, Tulay Buyuk, Ahmet Buyuk, and Dorothy Willard repeat and re-allege each and

every allegation set forth above with like effect as if alleged herein.

(24) As a direct and intended consequence of the intentional and reckless actions

of the Defendants, conduct that is intolerable in a civilized society, the Islamic Republic

of Iran, the Republic of Sudan, the Ministry of the Interior of the Republic of Sudan and

the Iranian Ministry of Information and Security, their co-conspirators and those who

were substantially aided and abetted by Defendants who carried out the attacks above

alleged, the Plaintiffs whose names are set forth in the preceding paragraph, as a natural

and continuous sequence of the actions of the defendants, were caused severe mental

distress which will continue for the balance of each Plaintiff's life, and each has thereby

suffered damages in the amount of twenty million dollars.

**WHEREFORE,** Plaintiffs, Frank B. Pressley, Jr., Yasemin B. Pressley, David A.

Pressley, Thomas C. Pressley, Michael F. Pressley, Berk F. Pressley, Jon B. Pressley,

Marc Y. Pressley, Sundus Buyuk, Montine Bowen, Frank Pressley, Sr., Bahar Buyuk,

Serpil Buyuk, Tulay Buyuk, Ahmet Buyuk, and Dorothy Willard, each demand judgment

jointly and severally, against the Defendants, the Islamic Republic of Iran, the Republic of

the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian

Ministry of Information and Security, each Plaintiff in the amount of **TWENTY**

**MILLION DOLLARS ($20,000,000.00),** besides costs.

**COUNT VI**
**CLAIM OF YASEMIN B. PRESSLEY FOR LOSS OF CONSORTIUM**
**28 U.S.C. §1605A AND FLORIDA COMMON LAW**

(25) Plaintiff, Yasemin B. Pressley, repeats and re-alleges each and every

allegation set forth above with like effect as if alleged herein.

(26) As a further and direct proximate result of the acts of the Defendants, the

Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the

Republic of the Sudan and the Iranian Ministry of Information and Security, the Plaintiff,

Yasemin Pressley, the wife of the Plaintiff, Frank B. Pressley, Jr., was caused to sustain a

loss of services, comfort, society, and attentions in the past and future of the Plaintiff, Frank

B. Pressley, Jr., and suffered a loss of consortium to the detriment of the marital relationship

and has suffered damages in the amount of $1,000,000.00.

**WHEREFORE**, Plaintiff, Yasemin B. Pressley, demands judgment jointly

and severally against the Defendants, the Islamic Republic of Iran, the Republic of the

Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry

of Information and Security, in the amount of **ONE MILLION DOLLARS**

**($1,000,000.00),** besides costs.

## COUNT VII
## CLAIM OF FRANK B. PRESSLEY, Jr. FOR LOSS OF CONSORTIUM
## 28 U.S.C. §1605A AND FLORIDA COMMON LAW

(27) Plaintiff, Frank B. Pressley, Jr. repeats and re-alleges each and every allegation set forth above with like effect as if alleged herein.

(28) As a further and direct proximate result of the acts of the Defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of Information and Security, the Plaintiff, Frank B. Pressley, the husband of the Plaintiff, Yasemin B. Pressley, was caused to sustain a loss of services, comfort, society, and attentions in the past and future of the Plaintiff, Yasemin B. Pressley, and suffered a loss of consortium to the detriment of the marital relationship and has suffered damages in the amount of $1,000,000.00.

**WHEREFORE**, Plaintiff, Frank B. Pressley, Jr., demands judgment jointly and severally, against the Defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of Information and Security, in the amount of **ONE MILLION DOLLARS ($1,000,000.00),** besides costs.

**22**

## COUNT VIII
## CLAIM OF ELLEN MARIE BOMER FOR PERSONAL INJURY
## RESULTING FROM ASSAULT AND BATTERY
## 28 U.S.C. §1605A AND TEXAS COMMON LAW

(29) Plaintiff, Ellen Marie Bomer, a resident of the State of Texas at the time of

the occurrence alleged, repeats and re-alleges each and every allegation set forth above

with equal effect as if alleged herein.

(30) On August 7, 1998, when the explosive device described above was

detonated at Nairobi, Plaintiff, Ellen Marie Bomer, suffered severe and permanent

injuries, including but not limited to, extensive shrapnel penetration to both eyes resulting

in permanent blindness, perforation of the left eye, detached retinas as to both eyes,

shrapnel wounds to the head, arms, torso and legs, ruptured eardrums, numbness of the

right hand, permanent partial loss of hearing, blast burns, severe lacerations of her entire

body resulting in permanent scarring, has contracted acquired immunodeficiency

syndrome as a result of rescue efforts/medical treatment and severe post traumatic stress

disorder. The explosion was intended to cause harmful contact with plaintiff and put her

in reasonable apprehension of imminent battery. These injuries were caused by a willful

and deliberate act of persons who had been materially assisted by Defendants for the

purpose of inflicting physical injuries upon this Plaintiff and others and by so doing to

intimidate the United States, and to cause its withdrawal from the Near East and Africa.

Those persons were at all times acting with the material support of the Defendants and

with the concurrence of the Defendants, the Islamic Republic of Iran, the Iranian Ministry

**23**

of Information and Security, the Republic of the Sudan and the Ministry of the Interior of the Republic of the Sudan.

(31) As a direct and proximate consequence of the intentional acts of the agents of the Defendants as above set forth and the injuries thereby inflicted, Plaintiff, Ellen Marie Bomer, has been required to undergo extensive medical treatment, nursing care, and other treatment, for which she has been required to expend funds, has occasioned a loss of wages and has endured great pain and suffering, humiliation and embarrassment, and she has thereby suffered damages in the amount of $20,000,000.00.

**WHEREFORE,** Plaintiff, Ellen Marie Bomer, demands judgment jointly and severally, against the Defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of Information and Security, in the amount of **TWENTY MILLION DOLLARS ($20,000,000.00),** besides costs.

## COUNT IX
### CLAIM OF ELLEN MARIE BOMER, DONALD G. BOMER, MICHAEL JAMES CORMIER, ANDREW JOHN WILLIAM CORMIER, ALEXANDRA RAIN CORMIER AND PATRICIA FEORE FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### 28 U.S.C. §1605A AND TEXAS COMMON LAW

(32) Plaintiffs, Ellen Marie Bomer, Donald G. Bomer, Michael James Cormier, Andrew John William Cormier, Alexandra Rain Cormier and Patricia Feore repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

24

(33) As a direct and intended consequence of the intentional and reckless actions of the Defendants, conduct that is intolerable in a civilized society, the Islamic Republic of Iran, the Republic of Sudan, the Ministry of the Interior of the Republic of Sudan and the Iranian Ministry of Information and Security, their co-conspirators and those who were substantially aided and abetted by Defendants who carried out the attacks above alleged, the Plaintiffs whose names are set forth in the preceding paragraph, were caused severe mental distress which will continue for the balance of each Plaintiff's life, and each has thereby suffered damages in the amount of twenty million dollars.

**WHEREFORE,** Plaintiffs, Ellen Marie Bomer, Donald G. Bomer, Michael James Cormier, Andrew John William Cormier, Alexandra Rain Cormier and Patricia Feore, each demand judgment jointly and severally, against the Defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of Information and Security, each Plaintiff in the amount of **TWENTY MILLION DOLLARS ($20,000,000.00),** besides costs.

**COUNT X**
**CLAIM OF DONALD G. BOMER FOR LOSS OF CONSORTIUM**
**28 U.S.C. §1605A AND TEXAS COMMON LAW**

(34) Plaintiff, Donald G. Bomer, repeats and re-alleges each and every allegation set forth above with like effect as if alleged herein.

(35) As a further and direct proximate result of the acts of the Defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of Information and Security, the plaintiff,

**25**

Donald G. Bomer, the husband of the Plaintiff, Ellen Marie Bomer, was caused to sustain a
loss of services, mental anguish, companionship, love and affection of the Plaintiff, Ellen
Marie Bomer, and suffered a loss of consortium to the detriment of the marital relationship
and has suffered damages in the amount of $1,000,000.00.

   **WHEREFORE**, Plaintiff, Donald G. Bomer, demands judgment jointly and
severally against the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of
the Interior of the Republic of the Sudan and the Iranian Ministry of Information and
Security, in the amount of **ONE MILLION DOLLARS ($1,000,000.00),** besides costs.

**COUNT XI**
**CLAIM OF CLYDE M. HIRN FOR PERSONAL INJURY**
**RESULTING FROM ASSAULT AND BATTERY**
**28 U.S.C. §1605A AND FLORIDA COMMON LAW**

   (36) Plaintiff, Clyde M. Hirn, a resident of the State of Florida at the time of the
occurrence alleged, repeats and re-alleges each and every allegation set forth above with
equal effect as if alleged herein.

   (37) On August 7, 1998, when the explosive device described above was
detonated at Nairobi, Plaintiff, Clyde M. Hirn, suffered severe and permanent injuries,
including but not limited to, extensive injury to the brain including concussion, nerve
damage to his legs and feet, a fractured shoulder, blast burns, severe lacerations of his
entire body resulting in permanent scarring, a shoulder fracture, loss of memory and
mental ability and severe post traumatic stress disorder The explosion was intended to
cause harmful contact with plaintiff and put him in reasonable apprehension of imminent
battery. These injuries were caused by a willful and deliberate act of persons who had
been materially assisted by Defendants for the purpose of inflicting physical injuries upon

this Plaintiff and others and by so doing to intimidate the United States, and to cause its withdrawal from the Near East and Africa. Those persons were at all times acting with the material support of the Defendants and with the concurrence of the Defendants, the Islamic Republic of Iran, the Iranian Ministry of Information and Security, the Republic of the Sudan and the Ministry of the Interior of the Republic of the Sudan.

(38) As a direct and proximate consequence of the intentional acts of the agents of the Defendants as above set forth and the injuries thereby inflicted, Plaintiff, Clyde M. Hirn, has been required to undergo extensive medical treatment, nursing care, and other treatment, for which he has been required to expend funds, has occasioned a loss of wages and has endured great pain and suffering, humiliation and embarrassment, and he has thereby suffered damages in the amount of $10,000,000.00.

**WHEREFORE,** Plaintiff, Clyde M. Hirn, demands judgment jointly and severally, against the Defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of Information and Security, in the amount of **TEN MILLION DOLLARS ($10,000,000.00),** besides costs.

### COUNT XII
### CLAIM OF CLYDE M. HIRN, ALICE M. HIRN, PATRICIA K. FAST AND INEZ P. HIRN FOR THE TORT OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS 28 U.S.C. §1605A AND FLORIDA COMMON LAW

(39) Plaintiffs, Clyde M. Hirn, Alice M. Hirn, Patricia K. Fast and Inez P. Hirn, repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

**27**

(40) As a direct and intended consequence of the intentional and reckless actions of the Defendants, conduct that is intolerable in a civilized society, the Islamic Republic of Iran, the Republic of Sudan, the Ministry of the Interior of the Republic of Sudan and the Iranian Ministry of Information and Security, their co-conspirators and those who were substantially aided and abetted by Defendants who carried out the attacks above alleged, the Plaintiffs whose names are set forth in the preceding paragraph, were caused, as a natural and continuous sequence of the actions of the defendants, severe mental distress which will continue for the balance of each Plaintiff's life, and each has thereby suffered damages in the amount of twenty million dollars.

**WHEREFORE,** Plaintiffs, Clyde M. Hirn, Alice M. Hirn, Patricia K. Fast and Inez P. Hirn, each demand judgment jointly and severally, against the Defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of Information and Security, each Plaintiff in the amount of **TWENTY MILLION DOLLARS ($20,000,000.00),** besides costs.

**COUNT XIII**
**CLAIM OF ALICE M. HIRN FOR LOSS OF CONSORTIUM**
**28 U.S.C. §1605A AND FLORIDA COMMON LAW**

(41) Plaintiff, Alice M. Hirn, repeats and re-alleges each and every allegation set forth above with like effect as if alleged herein.

(42) As a further and direct proximate result of the acts of the Defendants, the Islamic Republic of Iran, the Republic of Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of Information and Security, the Plaintiff, Alice M. Hirn, the wife of the Plaintiff, Clyde M. Hirn, was caused to sustain a loss of

services, comfort, society, and attentions in the past and future of the Plaintiff, Clyde M. Hirn, and suffered a loss of consortium to the detriment of the marital relationship and has suffered damages in the amount of $1,000,000.00.

**WHEREFORE**, Plaintiff, Alice M. Hirn, demands judgment jointly and severally against the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of Information and Security, in the amount of **ONE MILLION DOLLARS ($1,000,000.00),** besides costs.

**COUNT XIV**
**CLAIM OF JOYCE REED FOR PERSONAL INJURY**
**RESULTING FROM ASSAULT AND BATTERY**
**28 U.S.C. §1605A AND FLORIDA COMMON LAW**

(43) Plaintiff, Joyce Reed, a resident of the State of Florida at the time of the occurrence alleged, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

(44) On August 7, 1998, when the explosive device described above was detonated at Nairobi, Plaintiff, Joyce Reed, suffered severe and permanent injuries, including lacerations to her entire body and severe posttraumatic stress disorder. The explosion was intended to cause harmful contact with plaintiff and put her reasonable apprehension of imminent battery. These injuries were caused by a willful and deliberate act of persons who had been materially assisted by Defendants for the purpose of inflicting physical injuries upon this Plaintiff and others and by so doing to intimidate the United States, and to cause its withdrawal from the Near East and Africa. Those persons were at all times acting with the material support of the Defendants and with the concurrence of the Defendants, the Islamic Republic of Iran, the Iranian Ministry of

29

Information and Security, the Republic of the Sudan and the Ministry of the Interior of the Republic of the Sudan.

(45) As a direct and proximate consequence of the intentional acts of the agents of the Defendants as above set forth and the injuries thereby inflicted, Plaintiff, Joyce Reed, has been required to undergo extensive medical treatment, nursing care, and other treatment, for which she has been required to expend funds, has occasioned a loss of wages and has endured great pain and suffering, humiliation and embarrassment, and she has thereby suffered damages in the amount of $10,000,000.00.

**WHEREFORE,** Plaintiff, Joyce Reed, demands judgment jointly and severally, against the Defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of Information and Security, in the amount of **TEN MILLION DOLLARS ($10,000,000.00),** besides costs.

## COUNT XV
### CLAIM OF WORLEY LEE REED FOR PERSONAL INJURY RESULTING FROM ASSAULT AND BATTERY 28 U.S.C. §1605A AND FLORIDA COMMON LAW

(46) Plaintiff, Worley Lee Reed, a resident of the State of Florida at the time of the occurrence alleged, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

(47) On August 7, 1998, when the explosive device described above was detonated at Nairobi, Plaintiff, Worley Lee Reed, suffered severe and permanent injuries, including injury to both lungs, rotator cuff injury to both shoulders with severe loss of

30

movement and strength, spinal injuries and severe post traumatic stress disorder. The explosion was intended to cause harmful contact with plaintiff and put him in reasonable apprehension of imminent battery. These injuries were caused by a willful and deliberate act of persons who had been materially assisted by Defendants for the purpose of inflicting physical injuries upon this Plaintiff and others and by so doing to intimidate the United States, and to cause its withdrawal from the Near East and Africa. Those persons were at all times acting with the material support of the Defendants and with the concurrence of the Defendants, the Islamic Republic of Iran, the Iranian Ministry of Information and Security, the Republic of the Sudan and the Ministry of the Interior of the Republic of the Sudan.

(48) As a direct and proximate consequence of the intentional acts of the agents of the Defendants as above set forth and the injuries thereby inflicted, Plaintiff, Worley Lee Reed, has been required to undergo extensive medical treatment, nursing care, and other treatment, for which he has been required to expend funds, has occasioned a loss of wages and has endured great pain and suffering, humiliation and embarrassment, and he has thereby suffered damages in the amount of $10,000,000.00.

**WHEREFORE,** Plaintiff, Worley Lee Reed, demands judgment jointly and severally, against the Defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of Information and Security, in the amount of **TEN MILLION DOLLARS ($10,000,000.00),** besides costs.

**31**

## COUNT XVI
## CLAIM OF JOYCE ANN REED, WORLEY LEE REED, CHERYL L. BLOOD, BRET W. REED, RUTH ANN WHITESIDE, FLOSSIE VARNEY, LINDA JANE WHITESIDE LESLIE, LORIE GULICK AND PAM WILLIAMS FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS 28 U.S.C. §1605A AND FLORIDA COMMON LAW

(49) Plaintiffs, Joyce Ann Reed, Worley Lee Reed, Cheryl L. Blood, Bret W.

Reed, Ruth Ann Whiteside, Flossie Varney, Linda Jane Whiteside Leslie, Lorie Gulick

and Pam Williams, repeat and re-allege each and every allegation set forth above with

like effect as if alleged herein.

(50) As a direct and intended consequence of the intentional and reckless actions

of the Defendants, conduct that is intolerable in a civilized society, the Islamic Republic

of Iran, the Republic of Sudan, the Ministry of the Interior of the Republic of Sudan and

the Iranian Ministry of Information and Security, their co-conspirators and those who

were substantially aided and abetted by Defendants who carried out the attacks above

alleged, the Plaintiffs whose names are set forth in the preceding paragraph, were caused

severe mental distress which will continue for the balance of each Plaintiff's life, and

each has thereby suffered damages in the amount of twenty million dollars.

**WHEREFORE,** Plaintiffs, Joyce Ann Reed, Worley Lee Reed, Cheryl L. Blood,

Bret W. Reed, Ruth Ann Whiteside, Flossie Varney, Linda Jane Whiteside Leslie, Lorie

Gulick and Pam Williams, each demand judgment jointly and severally, against the

Defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the

Interior of the Republic of the Sudan and the Iranian Ministry of Information and

Security, each Plaintiff in the amount of **TWENTY MILLION DOLLARS**

**($20,000,000.00),** besides costs.

**32**

## COUNT XVII
## CLAIM OF WORLEY LEE REED FOR LOSS OF CONSORTIUM
## 28 U.S.C. §1605A AND FLORIDA COMMON LAW

(51) Plaintiff, Worley Lee Reed, repeats and re-alleges each and every allegation set forth above with like effect as if alleged herein.

(52) As a further and direct proximate result of the acts of the defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of Information and Security, the plaintiff, Worley Lee Reed, the husband of the Plaintiff, Joyce Ann Reed, was caused to sustain a loss of services, comfort, society, and attentions in the past and future of the plaintiff, Joyce Ann Reed, and suffered a loss on consortium to the detriment of the marital relationship and has suffered damages in the amount of $1,000,000.00.

**WHEREFORE,** Plaintiff, Worley Lee Reed, demands judgment jointly and severally against the, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of Information and Security, in the amount of **ONE MILLION DOLLARS ($1,000,000.00),** besides costs.

## COUNT XVIII
## CLAIM OF JOYCE REED FOR LOSS OF CONSORTIUM
## 28 U.S.C. §1605A AND FLORIDA COMMON LAW

(53) Plaintiff, Joyce Reed, repeats and re-alleges each and every allegation set forth above with like effect as if alleged herein.

(54) As a further and direct proximate result of the acts of the Defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the

Republic of the Sudan and the Iranian Ministry of Information and Security, the Plaintiff,

Joyce Reed, the wife of the Plaintiff, Worley Lee Reed, was caused to sustain a loss of

services, comfort, society, and attentions in the past and future of the Plaintiff, Worley Lee

Reed, and suffered a loss on consortium to the detriment of the marital relationship and has

suffered damages in the amount of $1,000,000.00.

**WHEREFORE**, Plaintiff, Joyce Reed, demands judgment jointly and severally

against the, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the

Interior of the Republic of the Sudan and the Iranian Ministry of Information and

Security, in the amount of **ONE MILLION DOLLARS ($1,000,000.00),** besides costs.

## COUNT XIX
## CLAIM OF LYDIA SPARKS FOR PERSONAL INJURY
## RESULTING FROM ASSAULT AND BATTERY
## 28 U.S.C. §1605A AND NORTH CAROLINA COMMON LAW

(55) Plaintiff, Lydia Sparks, a resident of the State of North Carolina at the time of

the occurrence alleged, repeats and re-alleges each and every allegation set forth above

with equal effect as if alleged herein.

(56) On August 7, 1998, when the explosive device described above was

detonated at Nairobi, Plaintiff, Lydia Sparks, suffered severe and permanent injuries,

including lacerations to her body, shrapnel and glass wounds, injury to facial nerves and

severe post traumatic stress disorder. The explosion was intended to cause harmful

contact with plaintiff and put him reasonable apprehension of imminent battery. These

injuries were caused by extreme, outrageous, willful and deliberate act of persons who

had been materially assisted by Defendants for the purpose of inflicting physical injuries

**34**

upon this Plaintiff and others and by so doing to intimidate the United States, and to cause its withdrawal from the Near East and Africa. Those persons were at all times acting with the material support of the Defendants and with the concurrence of the Defendants, the Islamic Republic of Iran, the Iranian Ministry of Information and Security, the Republic of the Sudan and the Ministry of the Interior of the Republic of the Sudan.

(57) As a direct and proximate consequence of the intentional acts of the agents of the Defendants as above set forth and the injuries thereby inflicted, Plaintiff, Lydia Sparks, has been required to undergo extensive medical treatment, nursing care, and other treatment, for which he has been required to expend funds, has occasioned a loss of wages and has endured great pain and suffering, humiliation and embarrassment, and she has thereby suffered damages in the amount of $10,000,000.00.

**WHEREFORE,** Plaintiff, Lydia Sparks, demands judgment jointly and severally, against the Defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of Information and Security, in the amount of **TEN MILLION DOLLARS ($10,000,000.00),** besides costs.

## COUNT XX
## CLAIM OF LYDIA SPARKS, HOWARD SPARKS, TABITHA CARTER, HOWARD SPARKS, Jr. AND MICHAEL RAY SPARKS FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS 28 U.S.C. §1605A AND NORTH CAROLINA COMMON LAW

(58) Plaintiffs, Lydia Sparks, Howard Sparks, Tabitha Carter, Howard Sparks, Jr. and Michael Ray Sparks, repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

(59) As a direct and intended consequence of the intentional and reckless actions of the Defendants, conduct that is intolerable in a civilized society, the Islamic Republic of Iran, the Republic of Sudan, the Ministry of the Interior of the Republic of Sudan and the Iranian Ministry of Information and Security, their co-conspirators and those who were substantially aided and abetted by Defendants who carried out the attacks above alleged, the Plaintiffs whose names are set forth in the preceding paragraph, were caused severe mental distress which will continue for the balance of each Plaintiff's life, and each has thereby suffered damages in the amount of twenty million dollars.

**WHEREFORE,** Plaintiffs, Lydia Sparks, Howard Sparks, Tabitha Carter, Howard Sparks, Jr. and Michael Ray Sparks, each demand judgment jointly and severally, against the Defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of Information and Security, each Plaintiff in the amount of **TWENTY MILLION DOLLARS ($20,000,000.00),** besides costs.

## COUNT XXI
## CLAIM OF HOWARD SPARKS FOR LOSS OF CONSORTIUM
## 28 U.S.C. §1605A AND NORTH CAROLINA COMMON LAW

(60) Plaintiff, Howard Sparks, repeats and re-alleges each and every allegation set forth above with like effect as if alleged herein.

(61) As a further and direct proximate result of the acts of the Defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of Information and Security, the Plaintiff, Howard Sparks, the husband of the Plaintiff, Lydia Sparks, was caused to sustain a loss of services, love and affection of the Plaintiff, Lydia Sparks, and suffered a loss on consortium to the detriment of the marital relationship and has suffered damages in the amount of $1,000,000.00.

**WHEREFORE**, Plaintiff, Howard Sparks, demands judgment jointly and severally against the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of Information and Security, in the amount of **ONE MILLION DOLLARS ($1,000,000.00),** besides costs.

## COUNT XXII
## CLAIM OF GARY O. SPIERS FOR PERSONAL INJURY
## RESULTING FROM ASSAULT AND BATTERY
## 28 U.S.C. §1605A AND MISSISSIPPI COMMON LAW

(62) Plaintiff, Gary O. Spiers, a resident of the State of Mississippi at the time of the occurrence alleged, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

37

(63) On August 7, 1998, when the explosive device described above was detonated at Nairobi, Plaintiff, Gary O. Spiers, suffered severe and permanent injuries, including a fractured right arm, dislocated right shoulder, shrapnel injuries to the groin and abdomen, punctured eardrums, lacerations to his body, loss of balance, erectile dysfunction, ringing in the ears and severe post traumatic stress disorder. The explosion was intended to cause harmful contact with plaintiff and put him reasonable apprehension of imminent battery. These injuries were caused by a willful and deliberate act of persons who had been materially assisted by Defendants for the purpose of inflicting physical injuries upon this Plaintiff and others and by so doing to intimidate the United States, and to cause its withdrawal from the Near East and Africa. Those persons were at all times acting with the material support of the Defendants and with the concurrence of the Defendants, the Islamic Republic of Iran, the Iranian Ministry of Information and Security, the Republic of the Sudan and the Ministry of the Interior of the Republic of the Sudan.

(64) As a direct and proximate consequence of the intentional acts of the agents of the Defendants as above set forth and the injuries thereby inflicted, Plaintiff, Gary O. Spiers, has been required to undergo extensive medical treatment, nursing care, and other treatment, for which he has been required to expend funds, has occasioned a loss of wages and has endured great pain and suffering, humiliation and embarrassment, and he has thereby suffered damages in the amount of $10,000,000.00.

**WHEREFORE,** Plaintiff, Gary O. Spiers, demands judgment jointly and severally, against the Defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of

Information and Security, in the amount of **TEN MILLION DOLLARS**

**($10,000,000.00),** besides costs.

### COUNT XXIII
### CLAIM OF GARY O. SPIERS, VICTORIA Q. SPIERS, VICTORIA J. SPIERS AND JULITA A. QUALICIO FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS 28 U.S.C. §1605A AND MISSISSIPPI COMMON LAW

(65) Plaintiffs, Gary O. Spiers, Victoria Q. Spiers, Victoria J. Spiers and Julita A. Qualicio, repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

(66) As a direct and intended consequence of the intentional and reckless actions of the Defendants, conduct that is intolerable in a civilized society and evokes outrage and revulsion, the Islamic Republic of Iran, the Republic of Sudan, the Ministry of the Interior of the Republic of Sudan and the Iranian Ministry of Information and Security, their co-conspirators and those who were substantially aided and abetted by Defendants who carried out the attacks above alleged, the Plaintiffs whose names are set forth in the preceding paragraph, were caused severe mental distress which will continue for the balance of each Plaintiff's life, and each has thereby suffered damages in the amount of twenty million dollars.

**WHEREFORE,** Plaintiffs, Gary O. Spiers, Victoria Q. Spiers, Victoria J. Spiers and Julita A. Qualicio, each demand judgment jointly and severally, against the Defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of Information and

Security, each Plaintiff in the amount of **TWENTY MILLION DOLLARS**

**($20,000,000.00),** besides costs.

**COUNT XXIV**
**CLAIM OF VICTORIA Q. SPIERS FOR LOSS OF CONSORTIUM**
**28 U.S.C. §1605A AND MISSISSIPPI COMMON LAW**

(67) Plaintiff, Victoria Q. Spiers, repeats and re-alleges each and every allegation set forth above with like effect as if alleged herein.

(68) As a further and direct proximate result of the acts of the Defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of Information and Security, the Plaintiff, Victoria Q. Spiers, the wife of the Plaintiff, Gary O. Spiers, was caused to sustain a loss of services, love and affection of the Plaintiff, Gary O. Spiers, and suffered a loss on consortium to the detriment of the marital relationship and has suffered damages in the amount of $1,000,000.00.

**WHEREFORE**, Plaintiff, Victoria Q. Spiers, demands judgment jointly and severally against the Defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of Information and Security, in the amount of **ONE MILLION DOLLARS**

**($1,000,000.00),** besides costs.

## COUNT XXV
## PUNITIVE DAMAGES
## 28 U.S.C. §1605A

(69) Plaintiffs, James Owens, et al., repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

(70) The actions carried out with the material support, knowledge and assistance of the Defendants, the Islamic Republic of Iran, the Republic of Sudan, the Ministry of Interior of the Republic of the Sudan and the Iranian Ministry of Information and Security, by their agents as described above, were malicious, willful, unlawful, and in wanton disregard of life and the standards of law which govern the actions of civilized nations. The injuries and loss of life, as above described, were intended as a result by each Defendant. The actions of those who carried out the attack described, were within the scope of their agency on behalf of the Defendants. In accordance with the provisions of Public Law 104-208, Div. A, Title I, Section 101 ( C ) each plaintiff is thereby entitled to punitive damages.

**WHEREFORE,** Plaintiffs, James Owens, Gary Robert Owens, Barbara Goff, Frank B. Pressley, Jr.,Yasemin Pressley, David Pressley, Thomas Pressley, Michael Pressley, Berk Pressley, Jon Pressley, Marc Pressley, Sundus Buyuk, Montine Bowen, Frank Pressley, Sr., Bahar Buyuk, Serpil Buyuk, Tulay Buyuk, Ahmet Buyuk, Dorothy Willard, Ellen Bomer, Donald Bomer, Michael James Cormier, Andrew Cormier, Alexandra Rain Cormier, Patricia Feore, Clyde M. Hirn, Alice M. Hirn, Patricia K. Fast, Inez P. Hirn, Michael James Cormier, Patricia Feore, Joyce Ann Reed, Worley Lee Reed, Cheryl L. Blood, Bret W. Reed, Ruth Ann Whiteside, Lorie Gulick, Pam Williams,

**41**

Flossie Varney, Linda Jane Whiteside Leslie, Lydia Sparks, Howard Sparks, Tabitha

Carter, Howard Sparks, Jr., Michael Ray Sparks, Gary O. Spiers, Victoria Q. Spiers,

Julita Qualicio and Victoria J. Spiers jointly pray that judgment be entered, jointly and

severally, against the Islamic Republic of Iran, the Republic of Sudan, the Ministry of

Interior of the Republic of the Sudan and the Iranian Ministry of Information and

Security, in the amount of **ONE BILLION DOLLARS ($1,000,000,000.00),** besides

costs, upon collection the amount in punitive damages to be distributed to each Plaintiff

in the proportion that the compensatory damages awarded to that Plaintiff bears to the

total compensatory damages awarded pursuant to this Complaint.

**August 7, 2008**                                    **Respectfully submitted,**

                                                      **FAY LAW, PA**

                                                      **THOMAS FORTUNE FAY**
                                                      **Unified Bar No. 23929**


                                                      **ANNIE P. KAPLAN**
                                                      **U.S.D.C.D.C. No. MD14548**

                                                      **CARAGH GLENN FAY**
                                                      **U.S.D.C.D.C. Bar No. 16955**
                                                      **601 Pennsylvania Avenue, NW**
                                                      **#900 - South Building**
                                                      **Washington, D.C.  20004**
                                                      **(202) 589-1300**

                                                      **Ronald Alvin Karp, Esq.**
                                                      **KARP FROSH, P.A.**
                                                      **2273 Research Blvd.**
                                                      **Suite 200**
                                                      **Rockville, MD 20850-4304**
                                                      **Attorneys For Plaintiffs**

08-1378
JDB

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|

I (a) PLAINTIFFS

James Owens, et al.

88888

DEFENDANTS

The Islamic Republic of Iran, et al.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

New Hanover, NC

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT     n/a
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Thomas Fortune Fay, Esq., Annie P. Kaplan, Esq.,
Caragh Glenn Fay, Esq.
FAY LAW,PA,601Pa.Ave.,NW,Washington,DC20004
202/589-1300

ATTORNEYS (IF KNOWN)

Case: 1:08-cv-01378
Assigned To : Bates, John D.
Assign. Date : 8/7/2008
Description: PI/Malpractice

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

O  1 U.S. Government
   Plaintiff

◉  3 Federal Question
   (U.S. Government Not a Party)

O  2 U.S. Government
   Defendant

O  4 Diversity
   (Indicate Citizenship of
   Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | ◉ 2 | ◉ 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | ◉ 6 |

**IV.  CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

O  **A. Antitrust**

☐ 410 Antitrust

◉  **B. Personal Injury/
    Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☒ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

O  **C. Administrative Agency
    Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
       Administrative Agency is Involved)

O  **D. Temporary Restraining
    Order/Preliminary
    Injunction**

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

O  **E. General Civil (Other)          OR          O  F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or
       defendant
☐ 871 IRS-Third Party 26
       USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
       of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
       Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
       Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
       Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
       Exchange
☐ 875 Customer Challenge 12 USC
       3410
☐ 900 Appeal of fee determination
       under equal access to Justice
☐ 950 Constitutionality of State
       Statutes
☐ 890 Other Statutory Actions (if
       not administrative agency
       review or Privacy Act

[4]

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Personal injury suffered in terrorist attack. Cae brought pursuant to 28 U.S.C. Section 1605A.

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23   **DEMAND $** 1,000,000,000.00  Check YES only if demanded in complaint
**JURY DEMAND:** YES ☐ NO ☒

**VIII. RELATED CASE(S) IF ANY**  (See instruction) YES ☒ NO ☐  If yes, please complete related case form.

DATE 8/7/2008   SIGNATURE OF ATTORNEY OF RECORD  *Thomas Fortune Fay*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.